OPINION
{¶ 1} Defendant-appellant Theresa S. appeals from a judgment awarding temporary custody of Theresa's three minor children, S.S., S.S., and S.S., to a non-relative, Lisa Parlette. Theresa contends that the trial court did not have jurisdiction to proceed with adjudicatory and dispositional hearings, as required by R.C. 3127.01, et. *Page 2 
seq., because Florida is the children's true home state. Theresa also contends that the trial court's decision is against the manifest weight of the evidence.
 {¶ 2} We conclude that the trial court did not err in asserting jurisdiction. Under R.C. 3127.15(A)(1), Ohio was the "home state" of the juveniles, who were allegedly neglected and dependent, because they were abandoned by their natural mother, and had lived continuously in Ohio for six months prior to the commencement of the action with a person claiming a right to legal custody of the children. The trial court also did not err in awarding temporary custody to a non-parent and in awarding protective supervision to the children services board. The decision is supported by evidence, which specifically supports findings that the natural mother had voluntarily abandoned the children, that placement with the children's father was not appropriate, and that the children were dependent and neglected. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} In late December 2007, Lisa Parlette filed a neglect and dependency complaint in the Montgomery County Court of Common Pleas, Juvenile Division, against Ronald and Theresa S., the natural parents of three minor children, S.S., S.S., and S.S. At the time the action was filed, the children were eleven, fourteen, and fifteen years of age.
 {¶ 4} Parlette alleged that the three children had resided with her in Ohio since May 2007, when they were abandoned by their mother. Parlette also alleged that the children's father, Ronald, was not allowed to see his children pursuant to an order of a *Page 3 
court in the State of Florida. Parlette asked for appointment of a guardian ad litem, a finding of neglect and dependency, an investigation regarding the father's ability to have contact with the children, and for the court to place the children in her custody. In addition, Parlette asked for an emergency hearing.
 {¶ 5} The trial court appointed a guardian ad litem in early January 2008. Following a hearing, the court found that exigent circumstances existed concerning the need for an interim order to ensure the children's safety. The court therefore granted Parlette temporary custody of the children in January 2008. Both parents had been notified of the hearing. Ronald attended, with counsel, but Theresa did not appear. The trial court granted interim parenting time to Theresa as agreed by the parties, ordered an investigation by the Montgomery County Children Services (MCCS), and set an adjudicatory and dispositional hearing for March 2008.
 {¶ 6} Prior to the March hearing, Theresa filed a motion requesting a change of venue to Florida, where she resided. The trial court denied the motion, finding the residence of the custodial parent irrelevant to the issue of venue, which was proper in the county where the children were found at the time of their alleged dependency or neglect.
 {¶ 7} The report of a guardian ad litem (GAL) was also filed before the March hearing. The GAL reported that Theresa had sent the children to Ohio in May 2007, under circumstances that were not clear. One of the children indicated that the mother had sent the children to Ohio to live with their father. Theresa claimed she had sent the children to Ohio to spend a few weeks with their maternal grandmother, and that the children's aunt had been scheduled to pick them up at the airport. However, the children *Page 4 
were not at the airport. Despite not knowing where the children were, Theresa did not call the authorities or her relatives to locate the children. By the time of the GAL report, Theresa had not had any contact with the children for ten months, other than a few phone calls. Theresa told the GAL repeatedly that she was not willing to accept the children back into her home. Theresa was opposed to the children living with Parlette, and wanted them placed in foster care. She had also filed a motion with the Florida courts toward the end that the children would be returned to Florida and placed in foster care there. However, the children did not want to live with their mother, and had threatened to run away if they were returned to Florida.
 {¶ 8} The GAL had reservations about Ronald, due to negative information about Ronald in the Florida court orders and issues associated with Ronald's conduct during the divorce proceedings in Florida. Parlette was deemed to be an appropriate custodian for the children and they were doing very well in her care. The GAL therefore recommended that Parlette be granted temporary interim custody of the children.
 {¶ 9} A hearing was held in mid-March 2008. Theresa did not appear at the hearing, but was represented by court-appointed counsel. Three witnesses testified: Parlette, the children's maternal grandmother, and an MCCS assessment worker. Following the hearing, the magistrate issued an order of adjudication and interim protective supervision. The magistrate indicated that the children had been sent to stay with the mother's sister and maternal grandparents on May 15, 2007. Neither party made contact with the children at the airport, and not a word of testimony had been offered about any effort to locate the children in the coming weeks or months or to verify their circumstances. The magistrate noted that he was "struck the most by the utter *Page 5 
failure of the mother or her family to find the children and verify their circumstances." Magistrate's Order of Adjudication, p. 1.
 {¶ 10} The first contact thereafter occurred in late August, 2007, when Parlette called the mother to inquire about enrolling the children in school in the Dayton area. Theresa refused, so the children were home-schooled. The magistrate found that the children were neglected children as of the date the complaint was filed, due to the mother's failure to visit with them or contact them for more than ninety days, between May 15, 2007, and late August 2007. Accordingly, the magistrate granted interim protective supervision to MCCS and ordered MCCS to explore reunification with either parent. The magistrate also ordered a dispositional hearing to be held in June 2008.
 {¶ 11} Theresa filed objections to the magistrate's decision, but the only specific objection she initially raised was to the grant of temporary custody to Parlette. The trial court subsequently ordered a transcript to be prepared at the State's expense, and granted Theresa an additional fourteen days after the filing of the transcript to file supplemental objections. Theresa's initial objections were supplemented by a jurisdictional challenge in May 2007. Attached to the objections was a purported copy of an order from a Florida court authorizing the emergency return of the children. The Florida order was neither certified nor time-stamped. Theresa also submitted additional objections after the transcript was filed, raising lack of jurisdiction and her contention that the magistrate's decision was against the manifest weight of the evidence.
 {¶ 12} In June 2008, the magistrate held a dispositional hearing, and heard testimony from Parlette and an MCCS caseworker. After the hearing, the magistrate filed a decision awarding temporary custody to Parlette and protective supervision to *Page 6 
MCCS. The magistrate indicated that although Theresa had conducted phone and e-mail contact with various parties in the courtroom, including the GAL and her attorney, she had failed to contact the children at all in 2008. In addition, the magistrate observed that the children had settled in very well with Parlette, had done exceedingly well in school that year, and had maintained appropriate and supportive contact with the father. However, the magistrate was unwilling to place the children with the father, due to the orders of the Florida divorce court regarding the father's suitability. The magistrate ordered Theresa to pay support and granted Theresa contact with the children, as agreed upon by the custodian, guardian, and caseworker. The magistrate also set the matter for an annual review/permanency hearing in December 2008.
 {¶ 13} In September 2008, the trial court filed an entry overruling all of Theresa's objections. The court noted much of the history related above, and concluded that it had exclusive jurisdiction under R.C. 2151.23(A)(1), due to the children's neglect and dependency. The trial court further concluded that the children had been abandoned, under R.C. 3127.01(B)(1), because Theresa had sent her children on a one-way trip to Ohio and had failed to visit or maintain contact with the children for more than ninety days. Finally, the court concluded that granting temporary custody to Parlette was in the children's best interests. Theresa appeals from the judgment of the trial court.
 II {¶ 14} Theresa's First Assignment of Error is as follows:
 {¶ 15} "THE TRIAL COURT'S DECISION SHOULD BE OVERRULED SINCE THE JUVENILE COURT DID NOT HAVE JURISDICTION TO PROCEED WITH THE *Page 7 
ADJUDICATORY AND DISPOSITIONAL HEARINGS AS EXPRESSLY REQUIRED BY OHIO REVISED CODE SECTION 3127.01, ETC., SINCE FLORIDA WAS THE CHILDREN'S TRUE HOME STATE IN THIS MATTER."
 {¶ 16} Under this assignment of error, Theresa contends that the trial court lacked jurisdiction over the present case, because Florida is the home state of the children, and the courts in Florida have not declined to exercise jurisdiction over the matter. The State argues, on the other hand, that the juvenile court has exclusive jurisdiction over this case under R.C. 2151.23, because of the children's neglect and dependency.[1]
 {¶ 17} R.C. 2151.23(A) provides that:
 {¶ 18} "The juvenile court has exclusive original jurisdiction under the Revised Code as follows:
 {¶ 19} "(1) Concerning any child who on or about the date specified in the complaint, * * * is alleged to * * * to be a juvenile traffic offender or a delinquent, unruly, abused, neglected, or dependent child * * *."
 {¶ 20} R.C. 2151.23(F)(1) further provides that "The juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections 3109.04 and 3127.01 to 3127.53 of the Revised Code and, as applicable, sections 5103.20 to 5103.22 or 5103.23 to 5103.237 of the Revised Code."
 {¶ 21} R.C. sections 3127.01 — 3127.53 codify Ohio's Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which was adopted in April 2005, following the repeal of predecessor statutes dealing with the same subject matter. See *Page 8 
R.C. sections 3109.21 — 3109.36, now repealed and referred to in prior case law as the Uniform Child Custody Jurisdiction Act or "UCCJA."[2]
 {¶ 22} The UCCJEA provides courts of this state with jurisdiction to make initial determinations in child custody proceedings. R.C. 3127.15(A) lists various circumstances in which jurisdiction is appropriate, including situations where Ohio is the home state of the child, where no other court has jurisdiction, or where the child's home state has declined jurisdiction on the grounds that Ohio is the more appropriate forum. The circumstance potentially applicable to the present case is found in R.C. 3127.15(A)(1), which states that:
 {¶ 23} "Except as otherwise provided in section 3127.18 of the Revised Code, a court of this state has jurisdiction to make an initial determination in a child custody proceeding only if one of the following applies:
 {¶ 24} "(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state."
 {¶ 25} "Home state" is defined by R.C. 3127.01(B)(7) as:
 {¶ 26} "[T]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding and, if a child is less than six months old, the state in which the child lived from birth with any of them. A period of temporary absence of any of *Page 9 
them is counted as part of the six-month or other period."
 {¶ 27} R.C. 3127.01(B)(13) further defines "Person acting as a parent" as:
 {¶ 28} "[A] person other than the child's parent, who meets both of the following criteria:
 {¶ 29} "(a) The person has physical custody of the child or has had physical custody of the child for a period of six consecutive months, including any temporary absence from the child, within one year immediately before the commencement of a child custody proceeding; and
 {¶ 30} "(b) The person has been awarded legal custody by a court or claims a right to legal custody under the law of this state."
 {¶ 31} At the time the dependency and neglect complaint was filed, the children had been in Parlette's physical custody for more than six consecutive months. Therefore, Ohio would qualify as the children's "home state" if Parlette had been awarded legal custody or claimed a right to legal custody under Ohio's laws. In the case of In reBrown, Darke App. No. 1676, 2006-Ohio-3189, we noted that non-parents have the right to file complaints for neglect and dependency and to obtain temporary and legal custody under R.C. 2151.27(A), R.C. 2151.27(C), and 2151.353(A)(3). Id. at ¶ 6.
 {¶ 32} Consistent with R.C. 2151.27(A) and (C), Parlette filed a complaint with the trial court alleging that the children were dependent and/or neglected, and asked the court to place the children in her custody. Parlette was granted interim temporary custody in January 2008. After an adjudicatory hearing, the trial court found the children had been abandoned, and on disposition, awarded Parlette temporary custody in July 2008. *Page 10 
 {¶ 33} R.C. 2151.011 (A)(53) defines "temporary custody" as "legal custody of a child who is removed from the child's home, which custody may be terminated at any time at the discretion of the court or, if the legal custody is granted in an agreement for temporary custody, by the person who executed the agreement." R.C. 2151.011 (A)(19) further defines "legal custody" as:
 {¶ 34} "[A] legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by any section of the Revised Code or by the court."
 {¶ 35} We conclude that all the requirements were met for Ohio to qualify as the children's "home state" under R.C. 3127.15(A)(1), and the trial court therefore had jurisdiction to determine the custody proceeding.[3]
 {¶ 36} Theresa contends that Parlette was a stranger who had never spoken to Theresa before the children's arrival in Ohio. But this is irrelevant. R.C. 2151.27(A)(1) allows "any person" having knowledge of a child who is neglected or dependent to file a complaint in juvenile court; the statute does not require that person to be personally *Page 11 
acquainted with a parent who is causing the dependency or neglect. Likewise, R.C. 3127.01(B)(13) does not require a person acting "as a parent" to be acquainted with the parents. We note that the children contacted Parlette of their own accord to ask for shelter and help; Parlette did not force the children to take shelter with her.
 {¶ 37} During her discussion of Parlette's status as a "stranger," Theresa also cites Rosen v. Celebrezze, 117 Ohio St.3d 241, 246,2008-Ohio-853, 883 N.E.2d 420. Theresa fails to explain her purpose for citing this case.
 {¶ 38} In Rosen, the Ohio Supreme Court held that R.C. 3127.15(A) provides exclusive grounds for asserting subject-matter jurisdiction in child custody determinations. The court also noted that lack of jurisdiction is not an error in the exercise of jurisdiction that can be waived, but is instead a defect in the court's subject-matter jurisdiction. 2008-Ohio-853, at ¶ 44-45. In the case before us, jurisdiction has been properly invoked under the dependency and neglect complaint. "`Under UCCJEA, the court in which a custody decree is originally issued retains continuing jurisdiction over issues of custody arising from that decree.'" North v. North, Summit App. No. 24297,2008-Ohio-6438, at ¶ 7 (citation omitted). The custody issues in the case before us do not arise from the divorce decree between the natural parents. To the contrary, they arise from a neglect and dependency complaint filed by an individual who was not a party to the divorce and has no connection to the divorce decree. Furthermore, the situation triggering Parlette's filing of the neglect and dependency complaint — Theresa's abandonment of the children in Ohio — arose after the divorce decree, and is unrelated to the divorce decree. *Page 12 
 {¶ 39} In order to protect against situations where parties engage in subterfuge to invoke jurisdiction, R.C. 3127.22(A) allows a trial court to decline jurisdiction, other than in emergency situations falling within R.C. 3127.28, if the parties have engaged in "unjustifiable conduct." R.C. 3127.22(D) defines "unjustifiable conduct" as:
 {¶ 40} "[C]onduct by a parent or that parent's surrogate that attempts to create jurisdiction in this state by removing the child from the child's home state, secreting the child, retaining the child, or restraining or otherwise preventing the child from returning to the child's home state in order to prevent the other parent from commencing a child custody proceeding in the child's home state."
 {¶ 41} There is no evidence that unjustifiable conduct, as defined above, occurred. The children were not removed from their home state, nor were they restrained, secreted, or prevented from returning to their home state. Instead, Theresa voluntarily sent the children to Ohio with a one-way airplane ticket. After the children made their own arrangements to obtain transportation from the airport, Theresa and her Dayton, Ohio relatives, which included parents and an aunt, made no inquiry as to the whereabouts of the minor children.[4] Theresa and her relatives did not report the matter to the police, either in Florida or Ohio, and they made no attempt to locate the children. Thereafter, Theresa did not attempt to contact the children for more than ninety days, even though she had her son's cell phone number and could have called him at any time. During the pendency of the juvenile court proceedings, which lasted for more than a year, Theresa had numerous conversations with her attorney and the GAL, but made *Page 13 
no attempt to contact or to visit her children.
 {¶ 42} Rosen is also factually distinguishable from the present case. The children in Rosen had previously lived in West Virginia and were brought to Ohio by their mother only four months before she filed for divorce. The Ohio Supreme Court held in that situation that West Virginia, where the father still resided, was the children's home state, rather than Ohio, because the children had resided in West Virginia within six months of the time the divorce action in Ohio was commenced. Id. at ¶ 3-4 and 50. In contrast, the children in the case before us resided in Ohio with Parlette for more than six months before the dependency and neglect action was filed. Accordingly, Ohio was the home state of the children under R.C. 3127.15(A), and the trial court had jurisdiction over the action.
 {¶ 43} Theresa's First Assignment of Error is overruled.
 II {¶ 44} Theresa's Second Assignment of Error is as follows:
 {¶ 45} "THE TRIAL COURT'S DECISION OF GRANTING TEMPORARY CUSTODY TO LISA PARLETTE AND NOT RETURNING CUSTODY BACK TO THE BIOLOGICAL MOTHER SHOULD BE OVERRULED AS BEING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 46} Under this assignment of error, Theresa contends that the trial court's decision is against the manifest weight of the evidence, because she sent the children to Ohio for a "vacation" and did not abandon them. Theresa, therefore, contends that there was not clear and convincing evidence, as required by R.C. 2151.414(E), that the *Page 14 
children could not be placed with either parent or should not be placed with either parent.
 {¶ 47} In assessing a manifest weight challenge in the civil context, we will not reverse a judgment as being against the manifest weight of the evidence where the judgment is "`supported by some competent, credible evidence going to all the essential elements of the case.'"Gevedon v. Ivey, 172 Ohio App.3d 567, 579, 2007-Ohio-2970,876 N.E.2d 604, at ¶ 54, quoting from C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578. The Ohio Supreme Court has also indicated that:
 {¶ 48} "[W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. * * * This presumption arises because the trial judge [or finder-of-fact] had an opportunity `to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' * * * `A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.'" State v. Wilson, 113 Ohio St.3d 382,387, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 24 (parenthetical material added; citations omitted).
 {¶ 49} R.C. 2151.414(E), upon which Theresa relies, does not apply in the case before us. R.C. 2151.414(E) applies in situations where the trial court must decide whether to grant permanent custody of children to a public or private child agency, and *Page 15 
thereby divest the natural parents of their parental rights. That is not what occurred. The trial court has not divested the parents of permanent custody.
 {¶ 50} Instead, the trial court held an adjudication hearing under R.C. 2151.35 to decide if the children were neglected or dependent. The court then held a dispositional hearing under R.C. 2151.353 to decide what the appropriate disposition for the children should be. The court awarded temporary custody to Parlette under R.C. 2151.353(A)(2). An award of permanent custody to a public children services agency or private child agency could be a potential future option, under R.C. 2151.353(A)(4), but permanent custody was not at issue when temporary custody was granted to Parlette.
 {¶ 51} After hearing evidence at the adjudicatory hearing, the court found the children to be neglected and dependent, and found that they had been abandoned by their mother. Abandonment is presumed when "the parents of a child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that ninety-day period." R.C. 3127.01(B)(1).
 {¶ 52} R.C. 2151.03(A) defines a "neglected child" as one who is abandoned by the parents, or who lacks adequate parental care because of the parents' faults, or whose parents neglect the child or refuse to provide proper or necessary subsistence or other care. R.C. 2151.04
further indicates that a "dependent child" is "one who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian" or whose environment "is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." R.C. 2151.04(A) and (C).
 {¶ 53} The record in the case before us clearly and convincingly establishes that *Page 16 
Theresa abandoned her children. Theresa sent her children to Ohio with a one-way airplane ticket and did not contact them between mid-May and late August 2007 — a period of well over ninety days. When Theresa was informed that her children were not at the airport in Dayton, she made no attempt to locate them or to contact any authorities about their disappearance. Her family also made no attempt to find the children and did not contact the authorities. In addition, Theresa told the GAL that she did not want the children returned to her; she wanted them placed in foster care in Florida. Under the circumstances, the only conclusion that can be reached is that Theresa willingly and voluntarily abandoned the children, and that they were neglected and dependent.
 {¶ 54} The record also indicates that the natural father was under a court order not to have contact with the children and he did not ask the court for legal custody. Again, these circumstances support the finding that the children were neglected and dependent.
 {¶ 55} Once a child is adjudicated dependent or neglected, the juvenile court may make orders of disposition under R.C. 2151.353, including placing the children in protective supervision, or committing the children to the temporary custody of a public children services agency or the temporary custody of various other parties, including the parents, certified foster care homes, or any other home approved by the court. Consistent with R.C. 2151.353(A)(1) and (2), the trial court ordered protective supervision to MCCS and granted Parlette temporary custody of the children, since placement was not appropriate with either parent.
 {¶ 56} "[A]n award of legal custody of a child does not divest parents of their *Page 17 
residual parental rights, privileges, and responsibilities," and either parent can petition the court in the future for modification of custody.In re C.R., 108 Ohio St.3d 369, 372-73, 2006-Ohio-1191, 843 N.E.2d 1188, at ¶ 17. The Ohio Supreme Court has also stressed that "no statute requires a finding of parental unfitness as a prerequisite to an award of legal custody in cases where a child is adjudged abused, neglected, or dependent." Instead, "abuse, neglect, or dependency adjudications implicitly involve a determination of the unsuitability of the child's parents." Id. at ¶ 21-22.
 {¶ 57} The trial court's determinations of abandonment, neglect, and dependency, and the decision to grant temporary custody to Parlette, with protective supervision by MCCS, are well-supported by the record. Accordingly, Theresa's Second Assignment of Error is overruled.
 IV {¶ 58} All of Theresa's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and WOLFF, JJ., concur.
Copies mailed to:
Mathias H. Heck, Jr.,
Johnna M. Shia
Byron K. Shaw
Hon. Nick Kuntz
[1] MCCS was added as a party in the trial court, and has filed a brief as plaintiff-appellee. Parlette has not filed a brief.
[2] Florida also has adopted the UCCJEA, which became effective in Florida in 2002. See sections 61.501-61.542, Florida Statutes (2007).
[3] If the children had been present in Ohio for less than six months, R.C. 3127.18 could have been invoked to support jurisdiction. R.C. 3127.18 is an exception to R.C. 3127.15(A), and allows Ohio courts to assert temporary emergency jurisdiction in certain situations. R.C. 3127.18 does not contain a "home state" or residency requirement. However, it does require the court to consult with courts in other states that have made previous custody determinations, and the time period of emergency orders may be limited. See R.C. 3127.18(C) and (D).
[4] One of the children called Parlette from the airport and told her that the three children had arrived in Dayton. The children apparently took a cab from the airport to the home of Parette's parents. Parlette had previously met and knew the children. *Page 1